JONAS EDWARDS *vs.* AMERICAN EXPRESS COMPANY.

Androscoggin.    Opinion November 11, 1912.

*Bill of Lading.   Contract.   Consignee.   Carrier.   Destination.   Delivery*
*Instructions.   Option of Carrier.   Transportation.   Re-shipping.*

The contract in this case which was evidenced by a bill of lading of the
standard form employed in shipping livestock, contained the stipulation
for the transportation of twenty-eight horses, Big 4 Car 287, from East
St. Louis, Illinois, to Detroit, Maine, consigned to Jonas Edwards at
Detroit. On the margin of bill of lading, the following was written in
pencil: "Consignee's request is that horses be fed and watered and
unloaded at Auburn, Maine, besides Buffalo, New York." There was no
express requirement that the car containing the horses should go by way
of Auburn, Maine, and no provision in the contract requiring the ship-
ment to be made by any particular route.

It is a well settled rule in the law of carriers where a bill of lading con-
tains no stipulation prescribing the particular route by which the shipment
of goods shall be made, the carrier has the option to select any one of
the ordinary routes of travel which is reasonably safe and expeditious
and not excessive in its charges.

On report.   Judgment for the plaintiff for $20 with interest from
May 12, 1911

This is an action to recover damages for an alleged breach of
the defendant's contract with the plaintiff, who resided at Auburn,
Maine, to transport twenty-eight horses from East St. Louis,
Illinois, to Detroit, Maine. On the margin of the bill of lading,
consignee's request that the horses be fed and watered and unloaded
at Auburn, Maine, besides Buffalo, New York. The stipulation in
the bill of lading was for the transportation of twenty-eight horses,
Big 4 Car 287, consigned to Jonas Edwards at Detroit, Maine.

At the conclusion of the evidence, the case was reported to the
Law Court for determination. The court, upon so much of the

evidence as is legally admissible to render such judgment as the law and the evidence require.

The case is stated in the opinion.

*Oakes, Pulsifer & Ludden,* for plaintiff.

*White & Carter,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING,. HALEY, JJ.

WHITEHOUSE, C. J. This is an action to recover damages for an alleged breach of the defendant's contract with the plaintiff who. resided at Auburn, Maine, to transport 28 horses from East St.. Louis, Illinois, to Detroit, Maine.

The contract was evidenced by a bill of lading of the standard form employed in shipping livestock. The following memorandum was written in pencil on the margin, namely: "Consignee's request is that horses be fed and watered and unloaded at Auburn, Maine, besides Buffalo, New York." The stipulation in the bill of lading was for the transportation of 28 horses Big 4 car 287, consigned to Jonas Edwards at Detroit for the sum of $355. There was no express requirement that this car should go by the way of Auburn, Maine, and there was no provision in the contract requiring the shipment to be made by any particular route. The plaintiff complains in his declaration that the horses were transported by a. route which did not pass through Auburn and that they were not unloaded, fed and watered at Auburn in accordance with the consignee's request, and he avers that in consequence of the defendant's failure to transport the horses by way of Auburn he was deprived of his lawful right to accept delivery of them at Auburn and to excuse the defendant from the further performance of the contract. It appears that in fact the plaintiff desired and intended to have sixteen of the horses left at Auburn and twelve only actually delivered at Detroit, and he claims to recover as damages $26, for the express paid for re-shipping sixteen horses from Detroit back to Auburn and $35.92 for plaintiff's loss of time and expenses of men besides an overcharge of $20 inadvertently made.

The case comes to the Law Court on report. It is admitted in the agreed statement that the shipment of horses in question left East St. Louis May 9, 1911, at 8.18 P. M. on "Big Four" train

numbered 24, which was a passenger train. On their arrival at Buffalo the horses were unloaded, fed and watered and given five hours rest, according to the request in the memorandum on the bill of lading. They left Buffalo at 5.40 A. M. of May 11, arrived in Boston at 7.50 P. M. of the same day, were shipped from Boston May 11 at ten P. M. on a passenger train running by way of Portland and Augusta to Waterville, arriving at Waterville at four A. M. on May 12, and left Waterville by the first train at 7.15 A. M. of May 12 arriving at their destination at Detroit, Maine, the same morning.

The car containing the horses traveled by passenger trains the entire distance from Buffalo, New York, to Detroit, Maine. There was no train leaving Boston on the night of May 11, after the arrival of the horses there at 7.50 P. M., which ran by the way of Auburn. At Portland the car containing the horses might have been detached from the train on which they left Boston, held at Portland and forwarded to Auburn on the train leaving Portland at seven o'clock the following morning and reaching Auburn at 8.15 A. M. which was the same time the horses reached their destination at Detroit, Maine. May 12, 1911, the plaintiff paid for the services rendered under the contract at Detroit, Maine, $398.25, of which the sum of $23.25 was the advance charge for unloading, feeding and watering the horses at Buffalo.

It is a well settled and familiar rule in the law of carriers that where a bill of lading contains no stipulation prescribing the particular route by which the shipment of goods shall be made, the carrier has the option to select any one of the ordinary routes of travel which is reasonably safe as well as expeditious and not excessive in its charges. *McElveen* v. *So. Ry. Co.,* 109 *Georgia,* 249, 77 Am. St. Rep. 375; *Patten, et als.* v. *Union Pac. Ry.,* 29 Fed. Rep., 591; Elliott on Railroads, Vol. 4, Sec. 1440 and notes.

But it is contended in behalf of the plaintiff in the case at bar that the consignee's request that the horses be unloaded, watered and fed at Auburn became a part of the contract and imposed upon the defendant the obligation to make the shipment of the horses by way of Auburn. It has been seen, however, that all of the twenty-eight horses were consigned to Jonas Edwards at Detroit, Maine, and the defendant had no knowledge of the plaintiff's secret pur-

pose to have sixteen of them unloaded and retained at Auburn until the evening of May 11, when there was a discussion between the plaintiff's agent and the defendant's express agent at Lewiston respecting the rule authorizing the defendant to make a charge of $10 a head for every horse unloaded and kept at Auburn under the conditions then existing, and even then it does not appear that the express agent was requested by the plaintiff or his representative to instruct the conductor of the train, then near Boston, to have the car. containing the horses sent through Auburn.

It has been seen that the horses coming by the route through Augusta arrived at their destination at Detroit at the same hour at which they would have arrived at Auburn if the car had been detached from the train at Portland, and sent through Auburn by the seven o'clock train on the morning of the 12th, although Detroit is seventy miles further east than Auburn. In view of this fact, and of the fact that the through rate by express from East St. Louis to Detroit is the same as that to Auburn, it is not denied by the plaintiff that the route through Augusta was an expeditious one and one which the defendant was justified in selecting, unless bound to go through Auburn by force of the plaintiff's request to have the horses watered and fed there. In the absence of information that any of the horses were to be left at Auburn, the defendant was warranted in assuming that the only purpose of his request for watering and feeding was to insure suitable care for the horses and to keep them in proper condition for use or sale. It was known that if the horses were shipped by the Augusta route, proper care would not require them to be fed and watered until they reached their destination at Detroit, and the needless expense of unloading, watering and feeding at Auburn would thus be avoided.

But the plaintiff further contends that in view of the confident claim of the defendant's local agent that the plaintiff would be chargeable with $10 for every horse unloaded and retained at Auburn, he decided on the evening of May 11th, to accept delivery of all the horses at Auburn and relieve the defendant of the further performance of its contract. The express agent denies that any such decision was made known to him on the evening of May 11th, and states that the first knowledge he had of it was on the morning of May 12, after the horses had arrived at Detroit. There is a

·sharp conflict of testimony upon this question, and it is sufficient ·to say that the plaintiff's contention does not seem to the court to· be established by a preponderance of the evidence. It is fairly to be inferred from all the. evidence that the real object of the plaintiff in ·having all of the horses consigned to him at Detroit and requesting that they be watered and fed at Auburn, was to hold sixteen of them at Auburn and save the local express rate on the other ·twelve horses from Auburn to Detroit. But this plan was defeated by the regulation requiring an unloading charge of ten dollars a head.

. The conclusion is that there was no breach of contract on the part of the defendant company. But on account of the inadvertent overcharge admitted by the defendant, the certificate must be,

> *Judgment for the plaintiff for $20,*
> *with interest from May 12, 1911.*