ROSENTHAL, Appellant, vs. CHICAGO & NORTHWESTERN
RAILWAY COMPANY, Respondent.

*September 14—October 5, 1915.*

*Carriers: Misrouting of freight: Liability as insurer: Acceptance at
destination: Subsequent injury.*

1. If a common carrier contracts to carry freight by a specified route
   and sends the freight by another route it becomes liable as an in-
   surer for any injury which may result by reason of its unauthor-
   ized act.
2. Where a railway company which had contracted to carry horses
   to Chicago by one route sent them by another, but upon their
   arrival at Chicago they were accepted and taken charge of by
   the shipper's agents, who, although they might have placed them
   in other barns in the vicinity, put them in the stockyards barns
   where they became infected with stockyards fever, the company
   was not responsible for the damage resulting from such infec-
   tion, although it was the shipper's intention (not disclosed to
   the railway company) that the horses should not go through
   to Chicago but should be stopped in transit and kept at an in-
   termediate station on the route agreed upon, at which station,
   by the terms of the contract, there was to be a "stop to feed and
   water."

APPEAL from a judgment of the circuit court for Colum-
bia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action to recover damages resulting from the alleged mis-
routing of a carload of horses shipped from Brookings, South
Dakota, to the Union Stockyards at Chicago.    The facts were
substantially as follows: The plaintiff, a horse dealer resid-
ing at Lodi, Wisconsin, purchased a carload of horses at
Brookings, South Dakota, through his agents, Lohman &
Samis, who lived in that vicinity.    The agents loaded the
horses, twenty-one in number, at Brookings, February 23,
1912, and entered into a written contract of carriage by
which the railway company agreed to transport the carload
to Chicago "to be delivered to Ed. Samis at Union Stock-
yards, Chicago station."    At request of Lohman & Samis

the defendant's agent at Brookings inserted in the contract the words, "Stop to feed and water at Lodi, Wis." In this contract Lohman & Samis were named as consignors and Ed. Samis as consignee. No notice was given to the defendant that plaintiff owned the horses or was interested in them. Plaintiff did not intend to let the horses go to Chicago, but he directed his agents to have them shipped to Chicago in order that they might travel on a through train which would go faster than the local train by which they would be hauled if they were billed to Lodi. He intended to stop the horses in transit at Lodi and take the horses to his barns, and for this purpose directed his agents to procure the insertion in the contract of the direction to stop for feed and water at Lodi. This purpose was unknown to the defendant. No bill of lading appears to have been made out, and the defendant's agent neglected to insert the direction to stop at Lodi in the waybill. Under defendant's tariff and routing instructions filed with the interstate commerce commission, freight billed to Chicago from Brookings and paying through tariff rates was to be routed *via* Clinton, Belle Plaine, Mason City, and Sanborn, and would not pass through Lodi, and the carload of horses went by this route, although the defendant had a route to Chicago through Winona and Lodi. Plaintiff expected the car to arrive at Lodi by a through freight train which passed through that station late Saturday night, but the car did not come and he at once telegraphed to the superintendent of the Winona division, and after considerable telegraphing it was ascertained that the shipment had gone by way of Clinton, whereupon plaintiff notified Samis of the fact, and Samis on Sunday morning, February 25th, started for Chicago to meet the shipment and at the same time telegraphed to Ellsworth & McNair, a commission firm in Chicago, to take care of the horses until he arrived. Samis arrived in Chicago on Monday morning and testifies that he found the horses in the stockyards barn

and that Ellsworth & McNair had just started to take care of them. There were other barns in the vicinity in which they could have been placed. Samis took care of them until evening in the stockyards barn and then had them shipped to the plaintiff at Lodi. The plaintiff put part of them in his own barn and part in a neighbor's barn. They all fell sick after a few days with "stockyards fever," two died, and the disease was communicated to other horses, causing one more death.

By special verdict the jury found (1) that the horses became infected with the fever in the Chicago stockyards; (2) that the failure to ship by way of Lodi was the proximate cause of the death of the two horses of the original shipment; (3) that no want of ordinary care on the part of the plaintiff or his agents proximately contributed to produce the fever in said two horses; (4) that the damages sustained by the death of said two horses amounted to $398; (5) that the failure to ship by way of Lodi was the proximate cause of a part of the other horses in the shipment becoming infected with the fever; (6) that no want of ordinary care on the part of plaintiff or his agents proximately contributed to produce said fever in said last named horses; (7) that plaintiff's damages by reason of the infection of said last named horses were $639.45; (8) that the failure to ship by way of Lodi was the proximate cause of the infection of plaintiff's other horses not contained in the shipment; (9) that no want of ordinary care on plaintiff's part contributed to produce said fever in the last named horses; (10) that plaintiff's damages by reason of the infection of the last named horses were $500; and (11) that Lohman & Samis acted as plaintiff's agents in the purchase of the horses. The trial court directed that the plaintiff have judgment for nominal damages and that the defendant have judgment for costs, and the plaintiff appeals.

For the appellant there were briefs by *Grotophorst, Evans & Thomas,* and oral argument by *Evan A. Evans.*

*Edward M. Smart,* for the respondent.

WINSLOW, C. J.  For the purposes of this case it will be assumed that the direction on the stock contract, "Stop to feed and water at Lodi, Wis.," amounted to a routing of the car by way of Winona and Lodi.  This proposition is not decided, however, and may be somewhat doubtful.  *Edwards v. Am. Exp. Co.* 109 Me. 444, 84 Atl. 987, 42 L. R. A. N. s. 705.

This court has certainly adopted the doctrine that if a common carrier contracts to carry freight by a specified route and sends the goods by another route it becomes liable as an insurer for any injury which may result by reason of its unauthorized act.  *Seavey Co. v. Union T. Co.* 106 Wis. 394, 82 N. W. 285.

The trial judge concluded, however, that inasmuch as it appeared without dispute that the cause of the disease was the putting of the horses in the stockyards barn, there could be no recovery by the plaintiff because this was done by the agents of the plaintiff, *i. e.* Ellsworth & McNair, who took charge of the horses by direction of Samis and put them in the stockyards barn when they might, had they been so directed, have placed them in other barns in the vicinity.  It appears that both plaintiff and Samis knew of the danger of contracting stockyards fever in the Chicago yards.  We see no flaw in the reasoning.  It is suggested that the evidence does not show conclusively that Ellsworth & McNair took the horses from the cars and placed them in the barn.  The circuit judge deemed this fact clearly proven, and after examining the evidence we are of opinion that his conclusion in this regard was correct.  It follows that the horses were accepted by the plaintiff through his agents on their arrival at

their destination and that they contracted the disease after such acceptance while in the possession of the plaintiff's agents and by reason of the acts of such agents.

The imperfect performance of the contract had thus been accepted by the plaintiff and the contract relations closed. The defendant cannot in justice be held responsible for what happened afterwards.

It is more than probable that there are other reasons which would prevent the plaintiff's recovery, but inasmuch as the foregoing is sufficient and is deemed unassailable it will not be necessary to consider them.

The plaintiff's misfortune is serious, but it is largely due to lack of candor, not to say deception, practiced by his agent, Samis, at the time the stock contract was made. It is very evident that Samis, by plaintiff's direction, attempted to obtain an advantage in the transportation of the horses for which he had neither contracted nor paid. Such methods are hardly to be approved even in dealing with a railroad company, and they make no appeal to one's sense of justice.

*By the Court.*—Judgment affirmed.